CAR-RON ASPHALT PAVING CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Car-Ron Asphalt Paving Co. v. Commissioner
Docket No. 7341-81.
United States Tax Court
T.C. Memo 1983-548; 1983 Tax Ct. Memo LEXIS 240; 46 T.C.M. (CCH) 1314; T.C.M. (RIA) 83548; September 7, 1983. Michael J. Occhionero, for the petitioner. David D. Dahl, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: The respondent determined that there are deficiencies in the income tax due from the petitioner for the years 1974 and 1975 in the respective amounts of $961.68 and $42,090.00. The deficiencies resulted from the disallowance by the respondent of deductions claimed by the petitioner, a paving subcontractor, for certain payments made for the benefit of an employee of one of the petitioner's general contractors. The payments were made by the petitioner in order to obtain subcontracts. The only issue for our decision is whether or not the payments are deductible under section 162. [1]
*241 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference. Car-Ron Asphalt Paving Co., Inc. is an Ohio corporation which had its principal office in Solon, Ohio, at the time its petition was filed. It was organized in 1968 by Raymond LaMarca and Michael Cohen, each of whom own 50 percent of its common stock. LaMarca has served as its president and Cohen has served as its vice president since its organization. The petitioner is in the paving business. Its work consists primarily of paving parking lots for factories, hospitals, shopping centers, schools, gas stations and occasionally driveways for private residences. Beginning in the latter part of 1974 and continuing through 1975 into 1976, the petitioner did the paving on two subcontracts it had with Forest City Enterprises, Inc. The subcontracts were on a job known as Rolling Acres Mall. Forest City Enterprises, Inc. was the general contractor for the construction of the mall and Nicholas Festa, its executive vice president, was responsible for obtaining, by competitive bids, all of the subcontracts *242 on the job. Petitioner submitted bids through Festa for the paving and in the fall or winter of 1974 obtained the two paving contracts in the total amount of approximately $1,000,000. Although the contracts were supposedly obtained with the competitive bids, they were actually negotiated by LaMarca and Festa. In fact, in order to obtain the subcontracts LaMarca agreed to have the petitioner pay for certain services and materials being used in the construction of a personal residence for Festa. In accordance with the understanding between LaMarca and Festa the petitioner issued 32 checks in 1975 to various parties who had furnished services or materials toward the construction of Festa's residence. These checks totaled $75,757.13. In addition to these checks, and for the same reason, the petitioner installed in 1975 an asphalt driveway at Festa's residence. The cost of the driveway was $11,929.92. The checks and the cost of the driveway were deducted on the petitioner's 1975 return as subcontractor's expense. In 1976, and again for the same reason, the petitioner made payments of $3,500 and $872 toward the construction of the residence of Festa. On petitioner's 1976 return *243 the $3,500 payment was deducted as subcontractor's expense while the $872 payment was deducted as professional consulting expense. The petitioner did at least 20 paving jobs each year. During 1973 through 1976 it had gross receipts as follows: Year
Gross Receipts
1973
$841,602.17
1974
1,115,844.82
1975
2,090,622.00
1976
1,398,661.00
For each of the years 1977 through 1980 the petitioner had gross receipts in excess of $2,500,000. For the year 1981 its gross receipts were approximately $4,000,000. During the years of its existence and up to the date of the trial the petitioner had done at least 25 but not more than 50 jobs for Forest City Enterprises including the job at Rolling Acres. The paving contracts on all of the jobs with Forest City other than Rolling Acres were obtained by competitive bids except about four or five. These four or five were obtained through Festa in the same manner as the contracts on Rolling Acres. These four or five contracts amounted to about $200,000 to $300,000. Almost all of the business done by the petitioner with the parties other than Forest City was done on competitive bids. None of the jobs done for others *244 were obtained through the payment of kickbacks as in the case of Rolling Acres. During his investigation, respondent's agent determined that in addition to the petitioner three or four other subcontractors on the Rolling Acres job made payments to Festa in order to obtain their subcontracts. During his investigation the agent was aware of section [4232.7]328 of the Internal Revenue Manual, Techniques Handbook for Specialized Industries--Construction, which reads in part as follows: (1) In the examination of taxpayers engaged in the construction industry, particular attention should be given to items that have been charged to job costs or expense accounts. Special emphasis should be given to the following items: (a) Kickbacks and payoffs are common in the construction industry and such payments are often made against public policy. The following ways that taxpayers make these payments may be helpful in disclosing unallowable deductions. * * * 4 Kickbacks may be made in the form of free work, such as blacktopping a driveway, construction of a home or commercial building at a bargain price. This might be done for persons responsible for obtaining the contract. [Internal *245 Revenue Manual, vol. I, pt. IV - Audit, ch. 4200, sec. [4232.7]328, at 7269-24 (CCH).] On or about July 1, 1983, Nicholas C. Festa pleaded guilty in the United States District Court for the Northern District of Ohio, Eastern Division, No. CR80-45, to having failed to include in his income tax return for 1973 "additional taxable income in the amount of $26,500 which was earned from commissions and kickbacks he solicited from contractors of his employer." At the same time and in the same action Festa also pleaded guilty to having failed to include in his 1975 income tax return "additional taxable income in the amount of $326,940.75, which was earned from commissions and kickbacks he solicited from contractors of his employer." Upon the entry of the guilty pleas the Court, at the request of the United States Attorney, dismissed similar charges against Festa with respect to his income tax returns for 1976 and 1977. No employee, officer, or other individual connected with Forest City Enterprises was aware during 1975 or 1976 that the petitioner was making payments to or for the benefit of Festa. At the time of the trial, Mr. LaMarca the president of petitioner had no direct knowledge *246 of the payment of any kickbacks in the paving industry in the locality of petitioner's activities other than those made by the petitioner to Festa but he had heard through general gossip that such payments were made and he had read in a local newspaper that Festa had been indicted for failing to pay income tax on kickbacks paid to him by four or five subcontractors at Rolling Acres other than the petitioner. OPINION The parties have stipulated that the payments made by the petitioner to Festa in order to obtain the subcontracts on the Rolling Acres Mall were not at that time and under those circumstances illegal under any Ohio law or under the law of the United States in the sense that such payments did not subject the petitioner as the payor of such payments to any criminal penalty or to the loss of a license of any privilege to engage in its trade or business. The respondent contends that nevertheless the payments are not deductible under section 162 because the petitioner has not established that the payments were ordinary and necessary. On the other hand, the petitioner contends that the payments were both ordinary and necessary and therefore are deductible under section *247 162. Section 162(a) provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." It has long been established that in order to be deductible under this section the expenditure must be both ordinary and necessary. . Ordinary as used in section 162 refers to "transactions * * * of common or frequent occurrence in the type of business involved." . In other words it is "the kind of transaction out of which the [payment] arose and its normalcy in the particular business which are crucial and controlling." . In , affd. we stated that "[t]o be ordinary within the meaning of section 162, expenditures must be common in the taxpayer's dealings or of frequent occurrence in the type of business in which the taxpayer is engaged." Again in , *248 revd. on other grounds , we concluded that commercial bribes paid by the taxpayer to a purchasing agent of the taxpayer's principal customer were not deductible because the taxpayer had failed to establish by reliable evidence that other similar arrangements or practices were common or ordinary in his industry. We are forced to the same conclusion in this case. All of the evidence clearly establishes that five or six subcontractors on the construction of the Rolling Acres Mall paid kickbacks to the same employee of the general contractor on the job and that the employee involved was indicted and pleaded guilty for failing to pay income tax on the kickbacks. This evidence does not in any way establish that the payment of kickbacks is common or ordinary in the construction business generally or in the paving business in particular. In fact, Mr. LaMarca's own testimony tends to establish the contrary. He testified that the petitioner had never paid kickbacks to anyone other than Festa and only to Festa with respect to Rolling Acres Mall and our or five other jobs which amounted to only $200,000 to $300,000 in gross receipts. These five or *249 six instances in which kickbacks were paid by the petitioner occurred over a period of 13 years, accounted for only five or six jobs out of approximately 260 jobs and resulted in not more than $1,300,000 in gross receipts. We conclude therefore that the petitioner has failed to establish that the payments made to Festa were ordinary within the meaning of section 162. ;[2]
In reaching this conclusion we have been unable to attach any significance to the comment appearing in the Internal Revenue Manual that "[k]ickbacks and payoffs are common in the construction industry." When considered in context it is apparent that this comment refers only to a method sometimes used by taxpayers in the construction business to claim unallowable deductions. It does not, as contended by the petitioner, constitute an acknowledgement by the respondent that the payment *250 of kickbacks and payoffs are ordinary in the construction business. We are also not convinced by this record that the payments made by the petitioner to Festa were necessary to the business of the petitioner. Here again Mr. LaMarca testified that the petitioner's business had grown steadily from its organization in 1968 through 1981. His testimony and the returns of the petitioner establish that for each of the eight years, 1974 through 1981, the gross receipts of the petitioner exceeded $1,000,000. For six of the eight years the gross receipts exceeded $2,000,000. None of the growth and obvious success prior to the latter part of 1974 can be attributed to kickbacks. All of the growth and success in obtaining business after that date was accomplished by the petitioner without making kickbacks to anyone other than Festa. Yet the business produced as a result of the payments made to Festa amounted at the most to only $1,300,000 as contrasted to the many millions which were not attributable to any kickback. Furthermore, from the minimum of 25 jobs which the petitioner obtained from Forest City only five or six were attributed by the petitioner to the kickbacks paid to Festa. *251 Consequently, petitioner must have received at least 19 or 20 contracts from Forest City without the payment of any kickback. As pointed out above, Mr. LaMarca also testified that these five or six contracts represented all of the kickbacks paid by the petitioner on the approximately 260 jobs petitioner had performed during the 13 years of its existence. The other 254 or 255 jobs must have been obtained without such payments. We conclude therefore that the petitioner has also failed to establish that the payment of the kickbacks to Festa was necessary to its business. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, in effect during the years in issue.↩
2. See also , on appeal (6th Cir. Mar. 21, 1983), involving another subcontractor on the Rolling Acres Mall.↩